ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| LUIS MIGUEL MURIEL<br><br>Parte Recurrente<br><br><br>v.<br><br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Parte Recurrida | TA2026RA00248 | *Revisión Judicial,* procedente del Departamento de Corrección y Rehabilitación<br><br>Querella Núm.:<br>408-23-006<br><br>Sobre:<br>Revocación de Privilegio (Violación de Condiciones del Convenio de Participación) |

Panel integrado por su presidenta, la Jueza Romero García, el Juez Monge Gómez y la Jueza Prats Palerm.

Monge Gómez, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 14 de mayo de 2026.

Compareció ante este Tribunal la parte recurrente, el Sr. Luis Miguel Muriel (en adelante, "el señor Muriel" o "Recurrente"), mediante recurso de revisión judicial presentado el 13 de mayo de 2026. Nos solicitó la revocación del Informe de Determinación de la Evaluación (en adelante, el "Informe") notificada por el Departamento de Corrección y Rehabilitación (en adelante, "DCR") el 30 de abril de 2026. Mediante la referida determinación, el DCR denegó la reinserción del señor Muriel al Centro de Tratamiento Residencial de Arecibo.

Examinada la solicitud de autos, la totalidad del expediente y el estado de derecho aplicable, prescindimos de la comparecencia de la parte recurrida, al amparo de la Regla 7(B)(5) del Reglamento de este Tribunal, autorizamos la "**Solicitud para Litigar como Indigente**" y por los fundamentos que expondremos a continuación, *confirmamos* el *Informe* impugnado.

### I.

Durante el mes de junio del año 2022, el Recurrente suscribió con el DCR un Convenio de Participación que le permitía extinguir la pena impuesta en el Centro de Tratamiento Residencial de Arecibo. Como parte de dicho acuerdo, el señor Muriel se obligó a, entre otras cosas, someterse a pruebas de droga periódicamente. Ya integrado al Centro por espacio de un (1) año, al señor Muriel

se le efectuó una prueba toxicológica que arrojó positivo a cocaína. Habiéndose corroborado el resultado y tras el propio Recurrente aceptar su consumo, el 14 de noviembre de 2023, el DCR emitió una *Resolución* mediante la cual revocó el privilegio concedido al señor Muriel.

Luego de varios años de dicha determinación, el Recurrente solicitó en varias ocasiones su reinserción al Centro. Todas y cada una de ellas fueron denegadas, sin embargo, no surge de los autos que el señor Muriel haya recurrido ante este Tribunal. Finalmente, durante el mes de marzo de este año, el señor Muriel insistió en volver a ser considerado para ingresar al Centro de Tratamiento. El 8 de abril de 2026, notificada al Recurrente el 30 del mismo mes y año, el DCR emitió el *Informe* recurrido. A través del mismo, se le denegó su solicitud fundamentada en que el señor Muriel, como potencial candidato a beneficiarse de algún programa de desvío, no cualificaba por el delito por el que estaba cumpliendo pena de reclusión.

Inconforme con dicha determinación, el Recurrente presentó el recurso de revisión judicial que nos ocupa y solicitó que revocáramos el *Informe*.

**II.**

**A.**

Es norma reiterada en nuestro ordenamiento jurídico que los tribunales apelativos están llamados a abstenerse de intervenir en las decisiones administrativas, ya que éstas poseen una presunción de legalidad y corrección. ECP Incorporated v. OCS, 205 DPR 268, 281 (2020); Torres Rivera v. Policía de PR, 196 DPR 606, 626 (2016). Cónsono con ello, se ha resuelto que las decisiones de las agencias administrativas gozan de la mayor deferencia por los tribunales. Oficina de Ética Gubernamental v. Martínez Giraud, 210 DPR 79, 88-89 (2022). Ello debido a que dichos entes gubernamentales son los que poseen el conocimiento especializado y experiencia en los asuntos que les son encomendados. Super Asphalt v. AFI, 206 DPR 803, 819 (2021). En los casos de revisión judicial, "[e]l criterio a aplicarse no es si la decisión administrativa es la más razonable o la mejor al arbitrio del foro judicial; es, repetimos, si la determinación administrativa, en interpretación de los reglamentos y las leyes que le incumbe implementar, es una razonable". Rivera Concepción v. A.R.Pe, 152 DPR 116, 124 (2000).

La Sección 4.5 de la LPAU, dispone que "[l]as determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo". 3 LPRA sec. 9675. Así pues, la intervención judicial en estos casos ha de centrarse en tres aspectos principales: (1) si el remedio concedido fue apropiado; (2) si las determinaciones de hechos están razonablemente sostenidas por la prueba y (3) si las conclusiones de derecho del organismo administrativo son correctas. P.R.T.C. Co. v. J. Reg. Tel. de P.R., 151 DPR 269, 281 (2000). Podemos decir que la deferencia reconocida a la decisión de una agencia administrativa cede en las siguientes circunstancias: cuando no está basada en evidencia sustancial, cuando el organismo administrativo ha errado en la aplicación de la ley y cuando ha mediado una actuación irrazonable o ilegal. T-JAC, Inc. v. Caguas Centrum Limited, 148 DPR 70, 80 (1999).

Las determinaciones de hechos de los organismos y agencias administrativas tienen a su favor una presunción de regularidad y corrección. Henríquez v. Consejo Educación Superior, 120 DPR 194, 210 (1987). De manera que los tribunales apelativos no intervienen con las determinaciones de hechos formuladas por una agencia administrativa si éstas están sostenidas por evidencia sustancial que surja del expediente administrativo. Asoc. Vec. H. San Jorge v. U. Med. Corp., 150 DPR 70, 75 (2000).

Según lo ha definido el Tribunal Supremo en diversas ocasiones, evidencia sustancial es "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". Hilton Hotels v. Junta Salario Mínimo, 74 DPR 670, 687 (1953). Por ello, quien impugne las determinaciones de hechos de una agencia administrativa tiene el deber de presentar ante el foro judicial la evidencia necesaria que permita, como cuestión de derecho, descartar la presunción de corrección de la determinación administrativa. El peso de la prueba descansa entonces sobre la parte que impugna la determinación administrativa. Com. Vec. Pro-Mej., Inc. v. J.P., 147 DPR 750, 761 (1999). Además, debe demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la

totalidad de la prueba que tuvo ante su consideración. Rebollo v. Yiyi Motors, 161 DPR 69, 76-77 (2002).

Las conclusiones de derecho, tal y como surge de la Sección 4.5 de la LPAU, *supra*, pueden ser revisadas en todos sus aspectos. 3 LPRA sec. 9675. Sin embargo, esto no significa que, al ejercer su función revisora, podamos descartar liberalmente las conclusiones e interpretaciones de la agencia, sustituyendo el criterio de ésta por el propio. "Al evaluar los casos es necesario distinguir entre cuestiones de interpretación estatutaria, en la que los tribunales son especialistas, y cuestiones propias para la discreción o pericia administrativa". Adorno Quiles v. Hernández, 126 DPR 191, 195 (1990).

El foro judicial podrá sustituir el criterio del organismo administrativo por el propio únicamente en aquellas ocasiones que no encuentre una base racional que fundamente la actuación administrativa. No obstante, es axioma judicial que, ante la prueba pericial y documental, el tribunal revisor se encuentra en igual posición que el foro recurrido y, por tanto, está facultado para apreciar la prueba apoyándose en su propio criterio. Dye-Tex de P.R., Inc. v. Royal Ins. Co., 150 DPR 658, 662 (2000).

Sin embargo, la deferencia judicial en la revisión de determinaciones administrativas no conlleva la renuncia de este Tribunal a su función revisora. Simplemente, define el carácter limitado de la función revisora a casos apropiados. La deferencia reconocida no equivale a la dimisión de la función revisora de este foro apelativo intermedio en instancias adecuadas y meritorias, como resulta ser cuando la agencia ha errado en la aplicación de la ley. Reyes Salcedo v. Policía de P.R., 143 DPR 85, 94 (1987).

**B.**

El Artículo VI, Sección 19 de nuestra Carta Magna establece la política púbica del Estado de "reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social". Art. VI, Sec. 19, Const. PR, LPRA, Tomo 1.

De conformidad con dicho axioma constitucional, el Artículo 2 del Plan de Reorganización Núm. 2 de 21 de noviembre de 2011, según enmendado, conocido

como el "Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011", 3 LPRA Ap. XVIII (en adelante, el "Plan de Reorganización), dispone que:

> La política pública del Gobierno de Puerto Rico a través de la creación de un sistema integrado de seguridad y administración correccional donde las funciones y deberes se armonicen en un proceso facilitador a la imposición de penas y medidas de seguridad, así como a la custodia de ciudadanos que han sido encontrados incursos en la comisión de un delito o falta y que establezcan procesos de rehabilitación moral y social del miembro de la población correccional o transgresor, a fin de fomentar su reincorporación a la sociedad. 3 LPRA Ap. XVIII, Art. 2.

A tenor con las disposiciones del Artículo 7, inciso (aa), del Plan de Reorganización, el DCR tendrá la facultad para:

> [A]doptar, establecer, desarrollar, enmendar, derogar e implementar reglas, reglamentos, órdenes, manuales, normas y procedimientos para el funcionamiento efectivo del Departamento y de los organismos bajo su jurisdicción, a los fines de regir la seguridad, la disciplina interna y la conducta de funcionarios, empleados y de la clientela, así como los programas y servicios. 3 LPRA Ap. XVIII, Art. 7 (aa).

De conformidad con las facultades anteriormente detalladas, el DCR adoptó el Reglamento Núm. 9245 de 20 de diciembre de 2020, conocido como el "Manual de Normas y Procedimientos para los Centros de Tratamiento Personal". Dicha pieza reglamentaria se aprobó conforme a la política pública del DCR dirigida a maximizar la probabilidad de rehabilitación de las personas bajo su custodia y preparar a la población correccional en el proceso de reinserción a la libre comunidad. *Véase*, Sección IV, Reglamento Núm. 9245. Así, como parte de las disposiciones del aludido Reglamento, todo participante está en la obligación de cumplir con lo establecido en los convenios que suscriban para participar de dicho programa. De conformidad con ello, el Reglamento establece una serie de conductas proscritas, cuya consecuencia podría ser que se le dé de baja del programa y sea devuelto a una facilidad correccional. *Véase*, Sección XI, Reglamento Núm. 9245. Entre las conductas prohibidas figura la introducción o utilización de drogas o alcohol en el Centro de Tratamiento.

Posteriormente, el DCR aprobó el Reglamento Núm. 9488 de 9 de agosto de 2023, conocido como el "Reglamento del Programa Integral de Reinserción Comunitaria". El fin ulterior del mismo es disponer la normativa de los programas de desvío para que las personas convictas cumplan parte de sus sentencias fuera

de la institución correccional. *Véase*, Art. II, Reglamento 9488. El Artículo VIII de dicho Reglamento establece que no serán elegibles para participar en programas de desvío establecidos por el DCR toda persona convicta que esté cumpliendo sentencia por, entre otros delitos, violaciones a la Ley Núm. 4 de 23 de junio de 1971, según enmendada, conocida como la "Ley de Sustancias Controladas de Puerto Rico", excepto las violaciones al Artículo 404 del estatuto. 24 LPRA secs. 2101 *et seq.* Dicha disposición guarda concordancia con lo establecido en el Artículo 16 del Plan de Reorganización Núm. 2-2011, *supra*, el cual reza, en su parte pertinente, de la siguiente forma:

[…]

No serán elegibles para participar en los programas de desvío establecidos por el Departamento las siguientes personas: a) toda persona convicta que esté cumpliendo sentencia por los siguientes delitos:

[…]

2) violaciones a la Ley Núm. 4 de 23 de junio de 1971, según enmendada, conocida como "Ley de Sustancias Controladas de Puerto Rico", excepto las violaciones al Artículo 404 de dicha Ley. 3 LPRA, Ap. XVIII, Art. 16.

**III.**

En esencia, el señor Muriel nos solicita que revisemos y revoquemos el *Informe* del DCR, bajo el fundamento de que ha transcurrido mucho tiempo desde que incumplió las normas y condiciones de su participación en el Centro de Tratamiento de Arecibo. De hecho, sostiene que de conformidad con el inciso 10 del Artículo VI del Reglamento Núm. 9488, *supra*, todo miembro de la población correccional que haya incurrido en una primera violación grave a las normas y condiciones de algún programa de desvío podrá ser considerado nuevamente, luego de haber transcurrido un mínimo de dieciocho (18) meses.

Ciertamente, no existe duda alguna con el hecho de que ha pasado en exceso del término que provee el Reglamento Núm. 9488, *supra*, para que el señor Muriel fuera considerado nuevamente para participar de cualquier programa de desvío, tras haber sido hallado incurso en una violación por arrojar positivo a cocaína. Igualmente, al examinar la documentación que forma parte del expediente electrónico ante nuestra consideración, notamos que el Recurrente solicitó en varias instancias su reinserción al Centro de Tratamiento. En dichas ocasiones, el DCR denegó sus peticiones bajo el fundamento de que no se había completado

correctamente la evaluación médica requerida y que es parte del plan institucional posterior a la revocación del privilegio en el año 2023. Ninguna de dichas denegatorias fueron objeto de revisión judicial.

Al examinar los fundamentos bajo los cuales se denegó la última solicitud interpuesta por el Recurrente que se consignó en el *Informe* recurrido, notamos que se basó en que éste no cualificaba para ningún programa de desvío debido al delito por el que cumplía sentencia. Según hemos adelantado, tanto el Plan de Reorganización del DCR, *supra*, como el Reglamento Núm. 9488, *supra*, taxativamente establecen que ningún convicto por violaciones a la Ley de Sustancias Controladas de Puerto Rico puede ser considerado para beneficiarse de un programa de desvío, excepto que se trate de una convicción por el Artículo 404 de dicho estatuto.

De una lectura de los documentos que se anejaron al recurso de epígrafe, notamos –primeramente– que la determinación inicial para que el Recurrente pudiera ser considerado participante del Centro se dio en una fecha previa a la aprobación del Reglamento Núm. 9488, *supra*. En segundo término, se desprende del legajo apelativo que el señor Muriel extingue una sentencia de 40 años y 90 días por violaciones al Artículo 411 de la Ley de Sustancias Controladas, *supra*. Siendo esa la realidad jurídica del caso de autos no existe otra opción en derecho que sostener el dictamen recurrido. Como tribunales, no podemos sustituir nuestro criterio por el del legislador, según consignado en el Plan de Reorganización del DCR y reiterado en el Reglamento Núm. 9488, *supra*.

Así pues, concluimos expresamente que el Recurrente no aportó evidencia suficiente para derrotar la presunción de corrección de la cual están investidas las decisiones del foro administrativo. En el ejercicio de nuestra función revisora, venimos compelidos a darle deferencia a la especialización, experiencia y las cuestiones propias de la discreción o pericia de las agencias administrativas. Tal y como hemos adelantado, somos de la opinión de que la agencia recurrida no actuó de manera arbitraria, ilegal, irrazonable o fuera del marco de los poderes que se le delegaron.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral de la presente *Sentencia*, *confirmamos* la *Determinación* emitida por el DCR.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones